```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3     UNITED STATES OF AMERICA,        Case No. 1:14cr225
                                        Akron, Ohio
 4              Plaintiff,              Wednesday, September 3, 2014

 5          vs.

 6     THE KELLY PLATING COMPANY,

 7                 Defendant.

 8
                         TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE KATHLEEN B. BURKE
                UNITED STATES DISTRICT MAGISTRATE JUDGE
10

11                         CHANGE OF PLEA

12
       APPEARANCES:
13
       For the Government:        Brad J. Beeson
14                                Office of the U.S. Attorney
                                  Suite 400
15                                801 Superior Avenue, W
                                  Cleveland, Ohio  44113
16                                216-622-3850

17
       For the Defendant:        Dean M. Valore
18                                Valore & Gordillo
                                  21055 Lorain Road
19                                Fairview park, Ohio  44126
                                  440-333-7330
20
                                  Michael G. Polito
21                                Polito, Paulozzi, Rodstrom & Burke
                                  21300 Lorain Road
22                                Fairview Park, Ohio  44126
                                  440-895-1234
23

24

25


                 Lori A. Callahan, RMR-CRR      (330) 252-6022
```

1

2

3    Court Reporter:              Lori Ann Callahan, RMR-CRR
                                  United States District Courthouse
4                                 Room 568
                                  2 South Main Street
5                                 Akron, Ohio  44308
                                  (330) 819-8676
6

7

8

9

10   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S

 2                      -  -  -

 3              COURTROOM DEPUTY CLERK:  The case before the court

 4     carries Case Number 1:14Ccr225, United States of America

 5     versus The Kelly Plating Company.

 6              THE COURT:  Good morning.  Would counsel for the

 7     United States please introduce themselves for the record?

 8              MR. BEESON:  For the United States, Brad Beeson.

 9              THE COURT:  All right.  And counsel for the

10     defendant, would you please introduce themselves for the

11     record.

12              MR. VALORE:  Good morning, Your Honor.  Dean

13     Valore on behalf of the Kelly Plating Company and with me at

14     the trial table is Donald Kelly, the president and sole

15     shareholder of The Kelly Plating Company.

16              THE COURT:  Good morning.

17              THE DEFENDANT:  Good morning.

18              THE COURT:  Mr. Valore, I have been informed that

19     The Kelly Plating Company wishes to plead guilty to Counts 1

20     and 2, I believe it is, of the indictment.

21              Is my understanding correct?

22              MR. VALORE:  That is correct, Your Honor.

23     Mr. Kelly as a representative of the company is prepared to

24     enter a plea agreement before Your Honor this morning that

25     the United States Attorney's Office has prepared and we're
```

1   in agreement with all the terms, so we'll go over that now,

2   I think, at your pleasure.

3         THE COURT:  All right.  We will go through the

4   plea agreement, the provisions of the plea agreement and a

10:34:11  5   number of other things.

6         The first thing I need to do is to make sure that

7   the defendant consents to my jurisdiction in this matter.

8         Mr. Kelly, I understand that you are here as the

9   authorized representative of Kelly Plating Company and that

10:34:31 10   you are authorized to speak on behalf of Kelly Plating.

11         Is that correct?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  All right.  So with respect to the

14   consent to my jurisdiction, I have that document here,

10:34:45 15   Mr. Kelly, and I'll show you the second page of this.  It

16   has some signature on it.  The top signature on the

17   right-hand side appears to be yours.

18         Is that correct?

19         THE DEFENDANT:  I believe so, Your Honor.

10:34:56 20         THE COURT:  And, Mr. Valore, your signature is

21   underneath Mr. Kelly's.

22         Correct?

23         MR. VALORE:  It is, Your Honor, and I witnessed

24   Mr. Kelly sign above mine.

10:35:03 25         THE COURT:  Okay.  And, Mr. Beeson, your signature

```
 1    there, as well --

 2              MR. BEESON:  Yes, Your Honor.

 3              THE COURT:  -- on the left side.  Okay.

 4              Do you understand, Mr. Kelly, that the company,

 5    The Kelly Plating Company, does have the right to offer up

 6    its plea of guilty to the United States District Judge in

 7    this case and that by consenting to my jurisdiction, you are

 8    agreeing that -- to give up your right to enter the plea

 9    before a United States District Judge and instead offer the

10    plea to me.

11              Do you understand that?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  All right.  And is that your wish on

14    behalf of Kelly Plating Company to consent to my

15    jurisdiction?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  All right.  Thank you.

18              Mr. Kelly, I'm going to just tell you right now

19    what we're going to be doing this morning.  We -- we --

20    there's several purposes to this proceeding.  The first is

21    to establish that the company that you represent, Kelly

22    Plating, is competent to make a plea.  The second is to make

23    sure that the plea is free and voluntary.  The third is to

24    understand that the company and you, as its representative,

25    understand the charges that have been made against the
```

1    company, the penalties that are associated with those

2    charges and the constitutional rights that the company will

3    be giving up by pleading guilty.

4         We will also ask both counsel for the United

10:36:31  5    States and yourself questions to determine whether there is

6    a factual basis for the plea, and finally, after we do all

7    those things, I will ask you on behalf of the company what

8    the company's plea is to the charges in the indictment.

9         I do want you to know, Mr. Kelly, that even though

10:36:50 10   the company has expressed an intent to plead guilty, the

11   company and you, on behalf of the company, have the right to

12   change your mind and to stand by the original plea of not

13   guilty at any time up until the end of this proceeding when

14   I ask you how the company pleads.

10:37:07 15        Do you understand that?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  All right.  During the proceeding

18   today, Mr. Kelly, I will be asking you a number of

19   questions.  The court reporter who's here will be recording

10:37:18 20   my questions and your answers.  You need to put your answers

21   in words because she cannot record a nod of the head or

22   other gesture.

23        If at any time you don't understand a question or

24   if at any time you wish to speak with your attorney,

10:37:33 25   Mr. Valore, please say so, because it is essential to a

1    valid plea that you understand on behalf of the company that

2    you understand each question before you answer.

3         None of my questions is intended to embarrass you

4    or the company.  Rather, they are the -- for the purpose of

10:37:50  5    determining that you, on behalf of the company, that the

6    company is competent to enter a plea and that the plea is a

7    knowing and voluntary plea.

8         Do you understand those instructions?

9         THE DEFENDANT:  Yes, Your Honor.

10:38:01  10    THE COURT:  The company does have the right to

11    remain silent, and you, as its representative, have the

12    right to remain silent.  You're not required to make a

13    statement, but anything you do say may be used against you.

14         Before I receive a guilty plea, there are a number

10:38:19  15    of questions that I will need to ask you to assure that the

16    company's plea is valid.  By answering those questions, you

17    will be making statements against the interest of the

18    company, and you will necessarily have to incriminate the

19    company.

10:38:35  20         Do you understand that by proceeding here today

21    with a guilty plea, you will necessarily be giving up the

22    company's right to remain silent?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  The courtroom deputy clerk will now

10:38:49  25    swear Mr. Kelly, the representative of the defendant

1    company.

2              COURTROOM DEPUTY CLERK:  If you could please stand

3    and raise your right hand.

4              (Defendant sworn.)

10:39:03  5    THE COURT:  Mr. Kelly, you have now been sworn and

6    you are under oath to tell the truth.  Your answers to my

7    questions will be subject to the penalties for perjury if

8    they are not truthful.

9              Do you understand those instructions?

10:39:15 10    THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  I'm now going to ask a

12    number of questions that are for the purpose of determining

13    that the defendant and you, on behalf of the defendant,

14    understand -- are competent to understand the proceedings

10:39:31 15   and to enter a knowing plea.

16             First, please state your full name.

17             THE DEFENDANT:  Donald James Kelly.

18             THE COURT:  And how old are you, Mr. Kelly?

19             THE DEFENDANT:  Fifty-four.

10:39:39 20    THE COURT:  Okay.  Are you a citizen of the United

21    States?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And how far did you go in school,

24    Mr. Kelly?

10:39:46 25    THE DEFENDANT:  Three years of college.

1          THE COURT:  Okay.  Where did you attend college?

2          THE DEFENDANT:  Ohio State and Cleveland State.

3          THE COURT:  Okay.  And what were you studying?

4  Did you have a major?

10:39:55  5          THE DEFENDANT:  General business courses.

6          THE COURT:  Okay.  And I'm going to ask you now

7  what kind of work you have done in the recent past, by which

8  I mean the last year or two, and just the nature of the

9  work, not -- not the name of the company or employer.

10:40:16 10          THE DEFENDANT:  Metal coatings and steel cleaning.

11          THE COURT:  Okay.  And have you been in an

12  executive position with regard to those industries?

13          THE DEFENDANT:  Yes, Your Honor.  I sign the

14  checks.

10:40:29 15          THE COURT:  Okay.  All right.  So you have some

16  management responsibility?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  And I take it from your

19  answers, Mr. Kelly, that you can both speak and understand

10:40:36 20  English.

21          Correct?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And that you are -- based on your

24  education, you are able to read and write in English

10:40:42 25  correct.

1           Is that correct?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Okay.  Do you know whether the company

4    has been previously convicted or pled guilty to any crime?

5           THE DEFENDANT:  No, Your Honor.

6           THE COURT:  All right.  The answer is that you

7    don't believe so.

8           Is that correct?

9           THE DEFENDANT:  I -- as far as any criminal

10   activity, no, Your Honor.

11          THE COURT:  All right.

12          MR. VALORE:  Your Honor, if I may, there was a --

13   there was a civil remedy worked out for the company with the

14   Northern -- Northeast Ohio Regional Sewer District regarding

15   some similar issues connected with the same case.  The

16   company was not criminally prosecuted for that, but it

17   reached a civil remedy out of court.

18          THE COURT:  Okay.  And I was just looking to find

19   out if there was anything that would be affected by the

20   guilty plea here today that would be, you know, whether

21   there would be any adverse effect on the status of the

22   company with respect to any other matter by virtue of the

23   plea.

24          MR. BEESON:  The only thing besides the terms of

25   the plea agreement, Your Honor, the company is subject to

1    potential disbarment as part of its guilty plea.

2              THE COURT:  Okay.  And maybe when we get to

3    discussing the penalties, I'll ask you about that again,

4    Mr. Beeson.

10:41:59  5              MR. BEESON:  Okay.

6              THE COURT:  Okay.  Mr. Kelly, within the last

7    year, have you been treated for a mental illness, an alcohol

8    addiction or a drug addiction?

9              THE DEFENDANT:  No, Your Honor.

10:42:08  10             THE COURT:  And within the last 24 hours, have you

11   taken any medication, drugs or alcohol?

12             THE DEFENDANT:  No, Your Honor.

13             THE COURT:  Okay.  I know that you are here today,

14   Mr. Kelly, as the representative on behalf of the

10:42:24  15  corporation, that is, the defendant in the case.  So I'm

16   going to ask you now whether you, in fact, have the

17   authority to speak on behalf of the corporation and to bind

18   the corporation to a plea of guilty.

19             THE DEFENDANT:  Yes, Your Honor.

10:42:40  20             THE COURT:  And do I understand correctly that you

21   are the president of Kelly Plating Company?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do I also understand that you are the

24   sole share -- sole owner of Kelly Plating Company?

10:42:51  25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  And so your authority --

2     there's no question in your mind that you are authorized to

3     speak on behalf of the company and to bind the company.

4          Is that correct?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  And, Mr. Valore, do you

7     have any concerns or doubts about Mr. Kelly's authority to

8     speak on behalf of the company and to bind the company?

9          MR. VALORE:  No, none.

10          THE COURT:  Mr. Beeson, do you have any concerns

11     about that?

12          MR. BEESON:  No, Your Honor.

13          THE COURT:  All right.  Mr. Kelly, I'm just going

14     to ask you now to explain in your own words, if you can,

15     what you understand the purpose of this hearing to be.

16          THE DEFENDANT:  There was a violation on our

17     property and that the -- it's my responsibility for anything

18     that happens on our property.

19          THE COURT:  Okay.  At the time of the arraignment

20     in this matter, the company was advised about its right to

21     counsel, and I don't know if you were the representative at

22     that time, Mr. Kelly, when the company was arraigned on

23     these charges?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  But I do want to advise you

Lori A. Callahan, RMR-CRR        (330) 252-6022

1    again that the company has a right to be represented by an

2    attorney at every stage of the proceedings in this case.  So

3    I do want to make sure that you understand -- do you

4    understand that the company has a right to counsel at every

10:44:19   5    stage of the proceeding?

6                   THE DEFENDANT:  Yes, Your Honor.

7                   THE COURT:  The company has retained Mr. Valore,

8    Mr. Dean Valore, who is here today as well as Mr. Polito, as

9    I understand it, to represent the company.

10:44:34  10                   Is that correct, Mr. Kelly?

11                   THE DEFENDANT:  Yes, Your Honor.

12                   THE COURT:  And do you understand that Mr. Valore

13   is the attorney for the company today?

14                   THE DEFENDANT:  That is -- yes, Your Honor.

10:44:45  15                   THE COURT:  Have you had enough time to discuss

16   the charges made against the company and the company's

17   response to those charges with Mr. Valore?

18                   THE DEFENDANT:  Yes, Your Honor.

19                   THE COURT:  Okay.  Have you told Mr. Valore

10:44:56  20   everything that you know about the case?

21                   THE DEFENDANT:  Yes, Your Honor.

22                   THE COURT:  And everything that you believe that

23   is within the corporate knowledge of the defendant company,

24   have you discussed that with him?

10:45:08  25                   THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  Are you completely satisfied

2     with the representation that your attorneys have given the

3     company and the advice that they have given the company?

4          THE DEFENDANT:  Yes, Your Honor.

10:45:19  5          THE COURT:  Okay.  I'm now going to discuss with

6     you, Mr. Kelly, a number of constitutional rights that the

7     company does have that it will be giving up by pleading

8     guilty today.  I'll describe each one of those rights to you

9     and ask you whether you understand -- whether you understand

10:45:39  10    the right and whether you understand that the company will

11    be giving up that right.

12          The first right that the company has is a right to

13    stand by its plea of not guilty and to require the

14    government to proceed to trial.  The company has a right to

10:45:56  15    a trial, including the right to a trial by jury and

16    including the assistance of counsel at trial.

17          At trial, the company would be presumed to be

18    innocent.  It would not have to prove that it was innocent.

19    Rather, the government would be required to prove the

10:46:11  20    company guilty by competent evidence beyond a reasonable

21    doubt as to each element of the offenses charged against the

22    company.

23          Do you understand the right to a trial that the

24    company has?

10:46:23  25          THE DEFENDANT:  Yes, Your Honor.

Lori A. Callahan, RMR-CRR      (330) 252-6022

1          THE COURT:  And do you understand that by pleading

2     guilty, the company will be giving up that right?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  The company also has a right to

10:46:33   5     compulsory process.  What that means is that if the case

6     were to go to trial, the company would have the right to

7     have the court issue subpoenas to require the attendance of

8     witnesses to testify on behalf of the company.

9          Do you understand the right to compulsory process?

10:46:48  10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And do you understand that by pleading

12     guilty, the company will be giving up that right?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  The company also has the right

10:46:57  15     to confront witnesses.  What that means is that if the case

16     were to go to trial, the company and you, as its

17     representative, would have the right to hear, to see, and to

18     cross-examine all witnesses that the government might

19     present against the company.

10:47:12  20          Do you understand that right?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  And do you understand that by pleading

23     guilty, the company will be giving up that right?

24          THE DEFENDANT:  Yes, Your Honor.

10:47:19  25          THE COURT:  Now, I don't know that the company --

1    let me just ask counsel this question:  Are there any Civil

2    Rights that the company would be giving up by pleading

3    guilty?

4              MR. BEESON:  Not that I'm aware of, Judge.

10:47:39   5              MR. VALORE:  No, Judge, not -- not any Civil

6    Rights.

7              THE COURT:  All right.  Thank you.  I'm now going

8    to go over the nature of the charges and the possible

9    consequences of a guilty plea.

10:47:55  10              Mr. Valore, do you and Mr. Kelly have a copy of

11   the indictment in this case?

12             MR. VALORE:  We do, Your Honor.

13             THE COURT:  All right.

14             MR. VALORE:  In fact, Judge, I don't know if you

10:48:04  15   want it now, I have the executed signed copy, original,

16   which is -- which Mr. Kelly and I have in front of us.  I

17   don't know if you want me to turn that over to Your Honor

18   now.

19             THE COURT:  Is that the plea agreement you're

10:48:16  20   referring to?  Okay.  We'll get to that in a few minutes.

21             MR. VALORE:  Okay.

22             THE COURT:  I'm talking about the indictment now

23   and the charges in the indictment.  So do you have that and

24   have you had an opportunity to review that with Mr. Kelly?

10:48:29  25             MR. VALORE:  I do, Your Honor, and we have gone

Lori A. Callahan, RMR-CRR        (330) 252-6022

1   over this together.  Mr. Kelly understands the maximum

2   possible statutory and guideline calculation sentencing

3   issues that are -- pertain to this indictment.

4               THE COURT:  Okay.  Mr. Kelly, you've been --

10:48:45  5   indicated that you intend to, on behalf of Kelly Plating

6   Company, to plead guilty to Counts 1 and 2 of the

7   indictment.

8               Count 1 charges the company with -- with a

9   conspiracy to violate the Clean Water Act in violation of

10:49:04 10   U.S. Code 18, Section 371.

11              Count 2 charges the company with a violation of an

12   approved pretreatment program in violation of 33, United

13   States Code, Section 1319(d)(2)(A).

14              I'm now --

10:49:24 15              MR. VALORE:  Judge, I believe it's (c)(2)(A).

16              THE COURT:  Oh, (c)(2)(A).  You -- you are

17   correct.  I'm misreading what I had written here.  So Count

18   2 is a charge of the violation of 33, United States Code,

19   Section 1319(c)(2)(A), which is a violation of an approved

10:49:40 20   pretreatment program.

21              Mr. Kelly, have you discussed the charges in the

22   indictment to which the company intends to plead guilty?

23   Have you discussed those with the company's attorney,

24   Mr. Valore?

10:49:55 25              THE DEFENDANT:  Yes, Your Honor.

1    THE COURT: And do you feel that you understand

2    the charges in the indictment?

3    THE DEFENDANT: Yes, Your Honor.

4    THE COURT: I'm going to go now through the

10:50:04  5    elements of the offenses charged in the indictment, and if

6    you want to follow along with that, those elements are set

7    forth in the plea agreement on page 3 in paragraph 8.

8    So I'll give you a minute to get there.

9    MR. VALORE: Okay, Judge.

10:50:24 10    THE COURT: The elements of the offense charged in

11    Count 1, which is the conspiracy count, conspiracy to

12    violate the Clean Water Act, there are three elements. The

13    first is that two or more persons conspired or agreed to

14    commit the crime of violating a requirement of an -- of an

10:50:43 15    approved pretreatment program.

16    The second element is that the defendant, which in

17    this case is Kelly Plating Company, knowingly and

18    voluntarily joined the conspiracy; and the third element is

19    that a member of the conspiracy did one of the overt acts

10:50:57 20    described in the indictment for the purpose of advancing or

21    helping the conspiracy.

22    Mr. Kelly, do you feel that you understand those

23    elements of the offense charged in Count 1 of the

24    indictment?

10:51:08 25    THE DEFENDANT: Yes, Your Honor.

1            THE COURT:  Okay.  The elements of the offense

2    charged in Count 2 of the indictment, Count 2 charges the

3    violation of an approved pretreatment program.  There are

4    three elements to that offense, as well.

10:51:23  5            The first is that the defendant, which in this

6    case is Kelly Plating Company, knowingly; second element is

7    violated any requirement of a pretreatment program, and the

8    third element is that the pretreatment program had been

9    approved under the Clean Water Act.

10:51:40 10            Mr. Kelly, do you understand those -- those

11   elements of Count 2 of the indictment?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  All right.  Mr. Valore, have you gone

14   over the elements of the offenses with Mr. Kelly, and do you

10:51:54 15   believe he understands those elements?

16            MR. VALORE:  Yes, I have, Judge.

17            THE COURT:  All right.  And you do believe he

18   understands?

19            MR. VALORE:  Yes, I do.

10:52:01 20            THE COURT:  All right.  Mr. Beeson, I'm going to

21   ask you to recite the penalties associated with the charges

22   to which the company, Kelly Plating Company, intends to

23   plead guilty.

24            MR. BEESON:  Under the first count, Your Honor,

10:52:15 25   the conspiracy charge, the maximum penalty is $500,000 fine

Lori A. Callahan, RMR-CRR     (330) 252-6022

1    and three years of probation and a $400 special assessment.

2              RECORDER:  I'm sorry.  Can you talk more into the

3    microphone?

4              THE COURT:  You may remain seated, Mr. Beeson.  I

10:52:29  5    would say the same for everyone here.  It's easier for the

6    recording --

7              MR. BEESON:  Got it.

8              THE COURT:  -- be made if you speak directly into

9    the microphone.

10:52:38  10             MR. BEESON:  I'll -- I'll start from the beginning

11   then.

12             THE COURT:  Okay.

13             MR. BEESON:  The first count concerns conspiracy,

14   and the maximum penalty for that is a $500,000 fine, three

10:52:51  15   years of probation and a $400 special assessment.  And in

16   Count 2 of the indictment, the maximum penalty is $50,000

17   per day of violation, or $500,000, whichever is larger,

18   three years probation and $400 special assessment, Your

19   Honor.

10:53:10  20             THE COURT:  All right.  And is there any mandatory

21   minimum penalty for either one of the counts?

22             MR. BEESON:  No, Your Honor.

23             THE COURT:  Is there any forfeiture or restitution

24   that may be imposed in connection with that -- those counts?

10:53:23  25             MR. BEESON:  There could be, Your Honor.

```
 1              THE COURT:  Okay.  And is that -- is it forfeiture

 2    or restitution or both?

 3              MR. BEESON:  Restitution, Your Honor.

 4              THE COURT:  Okay.  And that would be restitution

 5    pertaining to what, the cost of clean-up or --

 6              MR. BEESON:  Right.  Which there isn't any in this

 7    case, Your Honor.

 8              THE COURT:  Okay.  Are there any applicable costs

 9    that could be imposed on the company?

10              MR. BEESON:  No, Your Honor.

11              THE COURT:  Okay.  Such as cost of prosecution

12    and --

13              MR. BEESON:  There could be those, Your Honor, but

14    no cost in investigation.

15              THE COURT:  All right.  And I take it probably no

16    cost of incarceration in this particular case?

17              MR. BEESON:  That's correct, Your Honor.

18              THE COURT:  All right.  Did we talk about a

19    special assessment?  You did mention a $400.

20              MR. BEESON:  $400 per count, Your Honor, because

21    they're both penalties.

22              THE COURT:  Okay.  And I think probation does not

23    apply to this case; am I correct?

24              Well, wait a second.  There does.  You did

25    indicate that, didn't you, three years probation?
```

10:53:38  5
10:53:50 10
10:53:59 15
10:54:12 20
10:54:25 25

1          MR. BEESON:  Right.  Maximum per count is three

2     years.

3          THE COURT:  Okay.  And supervised release does not

4     have any application to this case; is that correct,

10:54:35  5     Mr. Beeson?

6          MR. BEESON:  No, it does not.

7          THE COURT:  All right.  I'm now going to ask you

8     some questions, Mr. Kelly, that go to the voluntariness of

9     the plea and the plea agreement.  Is the decision of The

10:54:48 10     Kelly Plating Company to plead guilty the result of an

11     exercise of its own free will?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And has anyone threatened The Kelly

14     Plating Company or threatened anyone else or forced the

10:55:01 15     company in any way to plead guilty?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  I have been advised that you and your

18     attorney on behalf of the company have entered into a plea

19     agreement with counsel for the government.

10:55:13 20          Is that correct?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  All right.  And, Mr. Valore, if you

23     now would hand up a copy -- the executed copy of the

24     agreement.

10:55:33 25          I'm now going to have you identify the agreement,

Lori A. Callahan, RMR-CRR          (330) 252-6022

1    Mr. Kelly.  This agreement has in the lower right-hand

2    corner of each page is a set of initials which appears to be

3    yours.

4              Are those your initials?

10:55:47  5    THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And then on the last page of the

7    agreement, there are some signatures.  It appears that your

8    signature is on the top line, Mr. Kelly.

9              Is that correct?

10:55:57 10    THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  And, Mr. Valore, your signature is the

12    second on that page, correct?

13              MR. VALORE:  That's right, Judge.

14              THE COURT:  And, Mr. Beeson, yours is the last

10:56:07 15    signature on that page.

16              Correct?

17              MR. BEESON:  That's correct, Your Honor.

18              THE COURT:  All right.  So have you -- do you have

19    a copy of the plea agreement at the table, Mr. Valore?

10:56:15 20    MR. VALORE:  We do, Your Honor.  We have one in

21    front of us.

22              THE COURT:  Okay.  Mr. Kelly, did you have an

23    opportunity to read the plea agreement and to discuss it

24    with your attorney before you signed it on behalf of the

10:56:26 25    company?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you feel that you understand the

3     terms of the plea agreement?

4          THE DEFENDANT:  Yes, Your Honor.

10:56:31  5          THE COURT:  Okay.  I'm now going to ask

6     Mr. Beeson, on behalf of the government, to state the

7     substance of the plea agreement with the exception of the

8     factual basis which we'll get to later on, and, Mr. Beeson,

9     you don't need to read the entire agreement, but just simply

10:56:48  10    to set forth the key -- the substance and the key terms of

11    the agreement.

12          MR. BEESON:  The first couple of pages concern the

13    maximum penalties, Your Honor.  The second page concerns the

14    maximum statutory penalty.  The third page lays out the

10:57:06  15    elements of the offense.  The fourth page concerns the --

16    whether this is the -- what type of an agreement this is, a

17    joint recommendation to the court.

18          In paragraph 15 of page 4, the agreement

19    recommends that the parties are going to recommend to the

10:57:24  20    court that the defendant pay a fine of $50,000.

21          In paragraph 16 on page 5, the parties also

22    recommend or will be recommending to the court that the

23    defendant make a community service payment in the amount of

24    $25,000, and that will be to a charitable organization to be

10:57:44  25    presented to the court prior to sentencing.

1          And at paragraph 17, the parties also recommend

2     that the court sentence the defendant two years of

3     probation.

4          Following that is a waiver of the defendant's

10:58:02  5     rights, and the next couple of pages concern the factual

6     basis of the plea, Your Honor.

7          THE COURT:  All right.  Let me look and see if

8     there's anything else that -- we will go through the factual

9     basis in more detail later on.  There are some provisions

10:58:20 10     after the factual basis, Mr. Beeson.  Do you want to say

11     anything about those?

12          MR. BEESON:  Yeah.

13          THE COURT:  That starts at page 8.

14          MR. BEESON:  Those begin at page 8.  Those are

10:58:30 15     boilerplate, Your Honor, concern the consequences of

16     breaching the plea agreement, that this plea agreement isn't

17     binding on other jurisdictions, that Mr. Kelly is satisfied

18     with the assistance of Mr. Valore, that this is a voluntary

19     agreement and the last page on page 10, Your Honor, is the

10:58:51 20     statement by Mr. Kelly that he's the authority to enter into

21     this plea agreement on behalf of The Kelly Plating Company.

22          THE COURT:  All right.  Thank you, Mr. Beeson.

23          I want to go back to something we were talking

24     about, the potential penalties, and I meant to ask you about

10:59:05 25     something that you had referred to earlier, which was a

1    potential -- was it a debarment or something of that nature?

2              MR. BEESON:  That's correct, Your Honor.

3              THE COURT:  Do you want to describe that now?

4              MR. BEESON:  After the company is sentenced, US

10:59:24  5    EPA has a debarment office and they will approach Kelly

6    Plating about possible debarment of the company from

7    government contract.

8              THE COURT:  Okay.  So, Mr. Kelly, you heard

9    Mr. Beeson's description of the potential penalties, and do

10:59:40 10   you understand that -- the potential penalties, as well as

11   the additional potential for debarment that Mr. Beeson has

12   mentioned?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  Did I ask you, Mr. Kelly,

11:00:00 15   whether -- I think I did.  I do want to ask now, Mr. Valore,

16   whether you agree with Mr. Beeson's description of the

17   substance of the plea agreement?

18             MR. VALORE:  I do, Your Honor, in its entirety.

19             THE COURT:  Okay.  And, Mr. Kelly, do you agree

11:00:13 20   with Mr. Beeson's description of the plea agreement?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  Mr. Kelly, has anyone,

23   including either your attorney, the attorney for the United

24   States or the court, made any promise other than the

11:00:30 25   promises contained in the plea agreement in order to

1    persuade Kelly Plating to plead guilty?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  All right.  Now, I'm going to go over

4    a few matters regarding the sentencing.  Mr. Beeson

11:00:53  5    described potential maximum penalties here.  And I think

6    you've already indicated, Mr. Kelly, that you do understand

7    those.  There isn't any potential prison term here so we

8    don't have to discuss that.

9              Have you had an opportunity, Mr. Kelly, to discuss

11:01:13 10    with Mr. Valore how the Sentencing Commission Guidelines

11    might apply in this case?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  All right.  I'm going to direct your

14    attention now to paragraphs 9 through 17 of the plea

11:01:29 15    agreement and those start on page 3.  Do you understand,

16    Mr. Kelly, that those paragraphs discuss the application of

17    the sentencing guidelines for this case?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  I'm going to direct your attention

11:01:50 20    specifically to paragraph 12 of the plea agreement which

21    appears on page 4, Mr. Kelly.  And that paragraph is

22    captioned "Sentencing recommendations not binding on the

23    court."  Mr. Beeson earlier described the agreement of the

24    parties with regard to the potential fine in this case and a

11:02:12 25    potential community service payment.

1           What this paragraph 12 says, Mr. Kelly, is that

2      the defendant, the company here, understands that the

3      recommendations of the parties will not be binding on the

4      court and defendant further understands that once the court

11:02:32  5      has accepted defendant's guilty plea, defendant will not

6      have the right to withdraw the guilty plea if the court does

7      not accept the sentencing recommendations made on

8      defendant's behalf or if defendant is otherwise dissatisfied

9      with the sentence.

11:02:48 10           Do you understand, Mr. Kelly, that if the court

11      does not accept the recommendations that the parties are --

12      will make to the court, that Kelly Plating will not be able

13      to withdraw its guilty plea?

14           THE DEFENDANT:  Yes, Your Honor.

11:03:02 15           THE COURT:  Do you also understand that sentencing

16      is within the discretion of the district court and that the

17      federal sentencing law requires the court to impose a

18      sentence that is reasonable, and that the court must

19      consider the sentencing guidelines in determining what is a

11:03:28 20      reasonable sentence?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Okay.  And do you understand that

23      there will be a presentence report prepared in this case and

24      that the court will determine the sentencing guideline range

11:03:44 25      that applies to the case after that report has been prepared

1    and reviewed by the parties?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And do you understand that in this --

4    and this goes along with what we've talked about in

11:03:58  5    paragraph 12, that the court may impose any sentence that is

6    permitted or provided by law, notwithstanding any

7    recommendation that is contained in the plea agreement?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you understand that the court alone

11:04:16  10   will decide the applicable sentencing range, whether there

11   is any basis to depart from that range or to impose a

12   sentence outside of the guideline range and what sentence to

13   impose?

14             THE DEFENDANT:  Yes, Your Honor.

11:04:28  15             THE COURT:  In other words, the sentence that the

16   court imposes may be different from any estimate that your

17   attorney may have given you.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

11:04:36  20             THE COURT:  I'm now going to direct your attention

21   to paragraph 18 of the plea agreement and that is -- starts

22   on page 5 and carries over to page 6.  That paragraph has to

23   do with the -- with the defendant's agreement to waive

24   certain appeal rights and rights to have or to have a

11:05:03  25   post-conviction attack on the guilty plea and/or the

Lori A. Callahan, RMR-CRR        (330) 252-6022

1    sentence in this case.

2         And do you understand, Mr. Kelly, that with the

3    exception of the circumstances listed in this paragraph 18,

4    that Kelly Plating is giving up its rights to appeal or to

11:05:28  5    have a collateral attack, and do you understand that the

6    rights that the company has to either appeal or to have a

7    collateral attack on the guilty plea or the sentence are

8    limited by this paragraph and limited to the circumstances

9    set forth in this paragraph?

11:05:48  10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  And those circumstances

12    are that the defendant does retain the right to appeal with

13    respect to any punishment in excess of the statutory minimum

14    or any sentence to the -- that exceeds that -- to the extent

11:06:06  15    it exceeds the agreed upon sentence.

16         In addition, the defendant retains the right to

17    appeal or have a collateral attack with respect to claims of

18    ineffective assistance of counsel or prosecutorial

19    misconduct.

11:06:21  20         So do you understand, Mr. Kelly, that with those

21    exceptions, the company may not either appeal or file a

22    collateral attack?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  All right.  Having discussed the

11:06:37  25    company 's rights with you, Mr. Kelly, do you still wish to

1    proceed with a guilty plea on behalf of the defendant

2    company?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  I will now ask Mr. Beeson on behalf of

11:06:51  5    the United States to review the portion of the plea

6    agreement in which the company stipulates to the facts that

7    relate to its conduct charged in the indictment; in other

8    words, the factual basis for the plea of guilty.  After he

9    sets forth those facts, Mr. Kelly, I will ask you if you

11:07:08  10    agree with the facts that he has stated.  I'll give you the

11    opportunity to correct any facts that you believe are

12    incorrect.

13                I will direct your attention to paragraph 19 of

14    the plea agreement where the facts are set forth so that you

11:07:23  15    can follow along there.

16                And, Mr. Beeson, I would ask you to pause after

17    each subparagraph so that I can ask Mr. Kelly if he agrees

18    with what you said.

19                MR. BEESON:  Okay.  Would you like me to read the

11:07:35  20    paragraphs individually, Your Honor?

21                THE COURT:  Yes.

22                MR. BEESON:  Okay.  Paragraph 19-A provides the

23    defendant, Kelly Plating Company, an Ohio company -- an Ohio

24    corporation was the owner and operator of a metal plating

11:07:52  25    facility, abbreviated "the facility," located in Cleveland,

1    Ohio.

2           As part of the metal plating processes at the

3    facility, solutions of metal such as chromium, abbreviated

4    "chrome" and zinc were used.  Therefore, the wastewater and

11:08:08  5    sludge generated at the facility also contained chrome and

6    zinc.

7           THE COURT:  Mr. Kelly, do you agree with those

8    facts?

9           THE DEFENDANT:  Yes, Your Honor.

11:08:16  10           MR. BEESON:  Paragraph B provides the facility

11    discharged into the sewer system connected to the wastewater

12    treatment plant owned and operated by the Northeast Ohio

13    Regional Sewer District, abbreviated "NEORSD," an often

14    referred to as the westerly plant.  After the wastewater

11:08:38  15    entered the westerly plant, it is treated and discharged

16    into Lake Erie.

17           THE COURT:  Do you agree with those facts,

18    Mr. Kelly?

19           THE DEFENDANT:  Yes, Your Honor.

11:08:46  20           MR. BEESON:  Paragraph C provides, the NEORSD's

21    approved pretreatment program prohibited bypasses of any

22    pretreatment system without the prior written notification

23    and approval of NEORSD.

24           THE COURT:  Do you agree with that statement?

11:09:04  25           THE DEFENDANT:  Yes, Your Honor.

1          MR. BEESON:  D, to reduce the amount of pollutants

2    discharged into the sewer system to an acceptable level, the

3    wastewater from the facility was processed using a

4    pretreatment system.  The defendant had a permit to

11:09:19  5    discharge treated industrial wastewater to the NEORSD's

6    sewer system issued by NEORSD.

7          THE COURT:  Do you agree with that statement,

8    Mr. Kelly?

9          THE DEFENDANT:  Yes, Your Honor.

11:09:34 10          MR. BEESON:  E, T.W. worked for the defendant at

11    the facility and had several job duties.  One of those

12    duties was as pretreatment operator.  As pretreatment

13    operator, T.W.'s duties included operation and oversight of

14    the pretreatment system.

11:09:54 15          THE COURT:  Do you agree with that statement,

16    Mr. Kelly?

17          THE DEFENDANT:  Yes, Your Honor.

18          MR. BEESON:  F, T.W. and another employee would

19    bypass the pretreatment system by, one, discharging from

11:10:06 20    near the bottom of the clarifier directly into the sewer

21    system; two, discharging from a waste storage pit directly

22    into the sewer system; and three, adding tap water to dilute

23    the bypasses as they entered the sewer system.

24          To conceal the bypasses, T.W. and another employee

11:10:28 25    would primarily, but not exclusively, conduct bypassing of

1    the pretreatment system on weekends.

2            THE COURT:  Do you agree with those statements,

3    Mr. Kelly?

4            THE DEFENDANT:  Yes, Your Honor.

11:10:38  5            MR. BEESON:  G, on the following dates, T.W. and

6    another employee bypassed the pretreatment system at the

7    facility.  Following -- or sampled -- sampling results of

8    the bypasses revealed the following approximate

9    concentrations of chrome and zinc.

11:10:58  10           THE COURT:  And, Mr. Beeson, I don't know if it's

11   necessary to read every line of that chart.  What I would

12   ask Mr. Kelly is whether he agrees with what you've stated

13   as well as what appears in paragraph 19-G as the dates of

14   discharge, the chrome concentrations which have numerical

11:11:23  15  concentrations for each date of discharge, and the zinc

16   concentrations with the numerical concentrations of -- for

17   each date of discharge that are listed in paragraph 19-G.

18           Do you agree with those, Mr. Kelly?

19           THE DEFENDANT:  Yes, Your Honor.

11:11:45  20           MR. BEESON:  Paragraph H, no employee of defendant

21   contacted NEORSD either before or after about these

22   bypasses.

23           THE COURT:  And do you agree with that statement,

24   Mr. Kelly?

11:11:56  25           THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Mr. Kelly, I'll now ask you if you

2 wish to make any changes in the facts as stated in paragraph

3 19 of the plea agreement?

4    THE DEFENDANT:  No, Your Honor.

11:12:07 5    THE COURT:  All right.  Do you admit that the

6 facts stated in paragraph 19 are true?

7    THE DEFENDANT:  Yes, Your Honor.

8    THE COURT:  All right.  Mr. Beeson, is there any

9 right or any procedural provision that I have failed to

11:12:19 10 account for prior to asking Mr. Kelly what the plea of The

11 Kelly Plating Company is?

12    MR. BEESON:  No, Your Honor.

13    THE COURT:  And, Mr. Valore, I would ask you the

14 same question?

11:12:28 15    MR. VALORE:  No, Your Honor.

16    THE COURT:  All right.  Mr. Kelly, I'm now

17 prepared to receive the plea of The Kelly Plating Company.

18    Do you wish to confer with Mr. Valore before I ask

19 you what the plea is?

11:12:43 20    THE DEFENDANT:  Guilty of Counts 1 and 2.

21    THE COURT:  All right.  We'll -- we'll get to that

22 in a second.

23    MR. VALORE:  We don't need to confer, Your Honor.

24    THE COURT:  Okay.  And do you have any questions

11:12:51 25 of me before I ask you what the plea is?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Okay.  Now that I have advised you of

3     the company's rights, Mr. Kelly, and have received evidence

4     as to the company's competence and your competence to

11:13:07  5     represent and speak on behalf of the company and as to the

6     factual basis for the plea, how does The Kelly Plating

7     Company plead to Counts 1 and 2 of the indictment; guilty or

8     not guilty?

9          THE DEFENDANT:  Guilty, Your Honor.

11:13:20  10          THE COURT:  And, Mr. Kelly, are you pleading

11     guilty on behalf of The Plating Company to the offenses

12     charged in Counts 1 and 2 because the company, Kelly Plating

13     Company, is, in fact, guilty of those offenses?

14          THE DEFENDANT:  Yes, Your Honor.

11:13:32  15          THE COURT:  Thank you.  It is my finding that the

16     defendant, Kelly Plating Company, is fully competent to and

17     capable of entering an informed plea, and that Mr. Kelly, as

18     authorized corporate representative, is competent and

19     capable to speak on its behalf in entering an informed plea.

11:14:00  20          It is also my finding that The Kelly Plating

21     Company, through its authorized representative, is aware of

22     the nature of the charges brought against it and the

23     consequences of its plea, and that its plea of guilty to

24     Counts 1 and 2 of the indictment in this case is a knowing

11:14:14  25     and voluntary plea supported by an independent basis, in

Lori A. Callahan, RMR-CRR      (330) 252-6022

1    fact, concerning each of the elements of the offenses

2    charged.

3         I, therefore, recommend that the district judge

4    approve the plea agreement, accept Kelly Plating Company's

11:14:28  5    plea and adjudge Kelly Plating Company guilty of the

6    offenses charged in Counts 1 and 2 of the indictment.

7         Mr. Kelly, the court will ask for a presentence

8    investigation report to be prepared prior to sentencing

9    unless counsel indicates that one should not be prepared in

11:14:47  10   this case.  It is in the best interest of the company to

11   cooperate with the probation officer in furnishing

12   information for the presentence report since the report will

13   be an important factor in the court's decision as to what

14   the sentence will be.

11:14:59  15   The company and its counsel will have a right and

16   will have an opportunity to examine the report and to

17   comment on it at the time of sentencing.

18        Judge Pearson is the judge assigned to this case.

19   She will do the sentencing, and she has set the sentencing

11:15:18  20   hearing for December 11, 2014, at 11:30 a.m.  That will

21   occur at the United States Courthouse in Youngstown, Ohio.

22        At this time, I think we have concluded the

23   matters required to be addressed at this hearing.

24        Mr. Beeson, is that correct?

11:15:38  25        MR. BEESON:  That's correct.

                Lori A. Callahan, RMR-CRR    (330) 252-6022

1          THE COURT:  Mr. Valore, is that correct?

2          MR. VALORE:  I agree, Your Honor.

3          THE COURT:  All right.  And I thank counsel and

4     Mr. Kelly, as the representative, for his participation on

11:15:54   5     behalf of The Kelly Plating Company today.

6          MR. VALORE:  Thank you very much, Judge.

7          MR. BEESON:  Thanks, Your Honor.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Lori A. Callahan, RMR-CRR      (330) 252-6022

1                    C E R T I F I C A T E

2

3         I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7                    s/Lori A. Callahan
                    Lori Ann Callahan, RMR-CRR
8                    U.S. District Court, Suite 568
                    2 South Main Street
9                    Akron, Ohio  44308
                    (330) 252-6022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25